IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NEWSGUARD TECHNOLOGIES, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> FEDERAL TRADE COMMISSION and ANDREW FERGUSON, in his official capacity as Chairman of the Federal Trade Commission, <br><br> *Defendants*. | No. 1:26-cv-0353 (DLF) |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
TO HOLD THE PROCEEDINGS IN ABEYANCE**

In the typical case, proceedings in the district court continue apace despite the pendency of an interlocutory appeal. NewsGuard seeks to depart from that pattern, requesting an abeyance of the proceedings in this Court while it pursues an appeal from this Court's preliminary injunction decision. The only rationale NewsGuard offers for this approach is a concern that a renewed preliminary injunction motion should not be litigated before the D.C. Circuit resolves the pending appeal. But this Court need not and should not delay consideration of the merits, including its own jurisdiction, based solely on the pending appeal's speculative impact on a future, hypothetical motion for emergency relief (which NewsGuard is free to file after the appeal is resolved in any event). The Court should deny the motion and direct the parties to jointly propose a schedule for the next steps in the litigation.

**BACKGROUND**

In this case, NewsGuard challenges two FTC actions: (1) a civil investigative demand (CID) that the FTC issued to NewsGuard pursuant to the Commission's investigation into potential

advertising boycotts, and (2) a final consent order that settled the Commission's charges that an acquisition by Omnicom Group Inc. would violate the antitrust laws.  NewsGuard's motion for a preliminary injunction sought to bar enforcement of the CID and of a provision in the Omnicom consent order.  *See* Dkt.11 at 3; Dkt.11-26 at 1–2.

While that motion was pending, the Commission's investigation into advertising boycotts in violation of the antitrust laws continued.  Dkt.33 at 1–3.  As part of that investigation, the Commission filed a complaint against Dentsu, WPP, and Publicis—three of the largest advertising holding companies.  *FTC v. Dentsu US, Inc.*, No. 4:26-cv-469 (N.D. Tex. 2026).  To resolve claims that they engaged in unlawful collusion, Dentsu, WPP, and Publicis each agreed to stipulated final judgments imposing permanent injunctions.  *See* Dkt.33-2 (Dentsu Stipulated Order); Dkt.33-3 (WPP Stipulated Order); Dkt.33-4 (Publicis Stipulated Order).

Shortly after, FTC staff formally withdrew the CID that NewsGuard challenges here. Dkt.33-5 at 2.  The relief obtained in *Dentsu*, which marks the culmination of the Commission's investigation, "resolved the issues related to NewsGuard that gave rise to the CID," and the Commission therefore "no longer requires compliance with the CID."  *Id.*  At the same time (and for the same reason), FTC staff also withdrew several other CIDs issued in the investigation. Dkt.33 at 3.  After those CIDs were withdrawn, two other CID recipients voluntarily dismissed their pre-enforcement challenges to CIDs issued in this investigation.  *See* Notice of Voluntary Dismissal, *Disinformation Index, Inc. v. FTC*, No. 1:25-cv-4137 (D.D.C. Apr. 24, 2026) (dismissing case following withdrawal of CID to GDI); Minute Order, *Media Matters for Am. v. FTC*, No. 1:25-cv-1959 (D.D.C. May 4, 2026) (dismissing case pursuant to an agreed stipulation following withdrawal of CID to Media Matters); *see also* Order, *Media Matters for Am. v. FTC*,

No. 25-5302 (D.C. Cir. May 4, 2026) (per curiam) (dismissing appeal pursuant to a joint stipulation).

After the withdrawal of the CID, this Court denied NewsGuard's request for a preliminary injunction. Dkt.36. In its oral ruling, the Court determined that the Commission's withdrawal of the CID addressed any irreparable harm caused by the CID and obviated the need for an order enjoining its enforcement. More broadly, the Court found that NewsGuard failed to demonstrate irreparable harm for any of its claims and thus was not entitled to a preliminary injunction against enforcement of either the CID or the Omnicom consent order.

NewsGuard appealed the preliminary injunction ruling on April 22, 2026. Dkt.37. NewsGuard now moves to hold the proceedings in this Court in abeyance pending the resolution of its appeal. Dkt.40.

## ARGUMENT

This Court should deny NewsGuard's motion for an abeyance and proceed to consider its jurisdiction and the merits of NewsGuard's claims. District court proceedings following an interlocutory appeal ordinarily continue "as though no [interlocutory] appeal had been taken." *Ex parte Nat'l Enameling & Stamping Co.*, 201 U.S. 156, 162 (1906); *accord Garner v. United States*, 2026 WL 1045743, at *1 (D.C. Cir. Jan. 8, 2026) (per curiam). And in the case of an interlocutory appeal from a decision on a preliminary injunction motion, which is premised on an alleged "urgent need for action," Wright & Miller, 16 Federal Practice & Procedure § 3921.2 (3d ed. Apr. 2026), appellate courts "assume that the case will proceed forward expeditiously in the district court despite the pendency of [an] appeal," *Garner*, 2026 WL 1045743, at *1 (quoting *Soc'y for Animal Rts., Inc. v. Schlesinger*, 512 F.2d 915, 918 (D.C. Cir. 1975) (per curiam)). Consistent with that default, this case should proceed in the ordinary course.

Nothing about NewsGuard's interlocutory appeal counsels otherwise. NewsGuard does not assert that its appeal of this Court's narrow preliminary injunction ruling will have any bearing on the merits of its claims. Instead, the only "legal issue" that NewsGuard says may be affected by its appeal is "the applicable standard for irreparable harm." Dkt.40 at 1. While that standard may be "central to NewsGuard's request for preliminary relief," *id.* at 2, it is irrelevant to the merits: whether this Court has jurisdiction over NewsGuard's claims or whether the complaint's allegations are otherwise adequate to survive a motion to dismiss.

Recent developments confirm that the Court should resolve the case promptly on threshold grounds. First, NewsGuard's claims regarding the CID have become moot. Following entry of the *Dentsu* consent orders, FTC staff withdrew the CID that NewsGuard challenges here. Dkt.33-5 at 2. Tellingly, Media Matters and GDI—the two other entities that had challenged a CID in this investigation—voluntarily dismissed their claims after FTC staff withdrew the relevant CIDs. *See supra* at 2–3. To the extent NewsGuard has any concerns regarding mootness, *see* Dkt.40 at 3 n.2, they can be addressed in discussions between the parties (as with Media Matters and GDI) or, if necessary, in a motion to dismiss. Second, the *Dentsu* complaint and settlement confirm that (contrary to NewsGuard's allegations) the Omnicom consent order was not retaliatory. Instead, it "was part of a comprehensive investigation against unlawful collusion in the digital advertising market." Dkt.33 at 4. Moreover, this Court lacks jurisdiction to hear NewsGuard's collateral and belated attack on the Omnicom consent order. *See* Dkt.20 at 45–51, 56. Given this Court's "special obligation" to assure itself of jurisdiction, it is thus particularly imperative to resolve this case promptly. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998).

Accordingly, the next steps in this litigation are clear. This Court should deny NewsGuard's request for a stay and direct the parties to submit a proposed schedule "within 7 days

4

of the Court's ruling." Dkt.39 at 1.  That report should propose a deadline for NewsGuard to file an amended complaint.  As NewsGuard itself explains, the "[i]ntervening developments" discussed above—specifically, the *Dentsu* settlement and the resulting withdrawal of the CID— have "materially changed the scope of this case."  Dkt.40 at 2.  NewsGuard therefore repeatedly states its intention to submit an amended complaint "to account" for these developments.  *Id.* at 1, 2, 4–5.  Having acknowledged that events have overtaken its claims and that it plans to amend, NewsGuard should promptly file an amended complaint.  Following submission of an amended complaint, the FTC anticipates filing a motion to dismiss to explain that the Court lacks jurisdiction over any of NewsGuard's claims and that, in any event, those claims fail to state a claim upon which relief can be granted.  *See* Dkt.20 at 25–56.  The Court can and should resolve that motion once it is fully briefed, regardless of the status of NewsGuard's interlocutory appeal.

NewsGuard's motion provides no coherent basis for abeyance.  It suggests that abeyance would prevent "duplicative litigation," Dkt.40 at 4, but there is nothing duplicative about moving forward in district court with the ordinary course of the proceedings during the pendency of an interlocutory appeal; that is routine and expected.  *See, e.g.*, *DynaLantic Corp. v. Dep't of Def.*, 107 F.3d 922 (D.C. Cir. 1996) (per curiam) (table); *Garner*, 2026 WL 1045743, at \*1; *Escobar Molina v. U.S. Dep't of Homeland Sec.*, __ F. Supp. 3d __, 2026 WL 1256234, at \*18 (D.D.C. May 7, 2026); *Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 937 F. Supp. 2d 18, 26 (D.D.C. 2013); *see also Kohls v. Ellison*, 166 F.4th 728, 733 (8th Cir. 2026) (noting that "case likely could have proceeded toward a final resolution on the merits in the year that ... elapsed" during interlocutory appeal of preliminary injunction order).

The only "risk of duplicative litigation" NewsGuard identifies is the possibility that NewsGuard itself might file a renewed motion for preliminary relief before the D.C. Circuit

resolves its appeal. *Id.* at 1, 4, 5. But naturally, the timing of any future preliminary injunction motion is up to NewsGuard: If NewsGuard believes it requires clarification from the D.C. Circuit before again seeking preliminary relief, it can choose to wait for the appeal to be resolved before filing a renewed preliminary injunction motion (as it would have to do if it secures the relief it seeks in this motion). In other words, NewsGuard is oddly asking for this Court to require it to do something NewsGuard can do voluntarily. NewsGuard simply does not need any relief *from this Court* to avoid what it styles as "duplicative briefing" or "unnecessary expenditure of party and judicial resources." *Id.* at 1–2. To be sure, NewsGuard is "wholly within [its] rights" to pursue an interlocutory appeal or to renew its request for a preliminary injunction, but it "may not" take those "steps and then be heard to complain that additional proceedings in this Court following the *usual* course of events are a waste of [its] resources." *Wrenn v. District of Columbia*, 179 F. Supp. 3d 135, 140 (D.D.C. 2016). And NewsGuard's mere guesses about "what *ultimately* might be the most efficient use of the Court's resources" do not "weigh in favor of [a] stay." *Id.*

At any rate, it is pure speculation to assert that the D.C. Circuit's ruling on irreparable harm "will directly affect further proceedings in this Court." Dkt.40 at 1. Specifically, NewsGuard hypothesizes that the D.C. Circuit may depart from this Court's application of settled legal principles, which could lead NewsGuard to renew its request for preliminary relief at some time in the future, "if appropriate." *Id.* Such "speculation about the downstream effects of the D.C. Circuit's resolution of [an] interlocutory appeal" is not a valid basis for a stay, *Wrenn*, 179 F. Supp. 3d at 140, especially where even that speculation has nothing to do with the merits that remain before this Court.[1]

---

[1] This Court's minute order in *Cambrera v. U.S. Department of Labor* does not help NewsGuard. No. 1:25-cv-1909 (Nov. 26, 2025). The Court did not issue a stay pending appeal there. Instead, the Court merely requested the parties' position on whether the case should be stayed. And while

More generally, the logic of NewsGuard's position is at odds with the very nature of emergency relief. To reiterate, the requested abeyance is premised on a potential future motion for preliminary relief (which would presumably follow an amended complaint). Dkt.40 at 1, 4–5. Since that motion would apparently be based on events *that have already occurred*—such as the Omnicom consent order or the *Dentsu* settlement—NewsGuard's theory must be that those events are *already* causing it irreparable harm today. Accordingly, as courts have repeatedly held (and as basic logic suggests), NewsGuard should be expected to proceed expeditiously to avoid all possible delay. *E.g.*, *Benisek v. Lamone*, 585 U.S. 155, 159–60 (2018) ("delay" in pressing First Amendment retaliation claim "weighed against [plaintiffs'] request" for preliminary injunctive relief); *see also* Dkt.14 at 3, 5–6 (arguing that "expedition is essential here" and that even a 30-day extension of a briefing schedule would constitute "substantial delay" that "would prejudice NewsGuard" (emphasis omitted)). Instead, NewsGuard actively seeks to *introduce* a delay of months or longer in the vague hopes of securing a more favorable legal standard for its motion. This lackadaisical approach certainly adds to the pile of evidence—which this Court has already correctly credited—that in fact NewsGuard is not suffering any irreparable harm at all. But it does not give this Court any reason to delay the proceedings in this case.

## CONCLUSION

For these reasons, the Court should deny NewsGuard's motion for an abeyance.

---

the Court suggested it was initially "inclined" toward a stay, *id.*, the posture there was meaningfully different, as NewsGuard acknowledges, *see* Dkt.40 at 5. In particularly, there the Court had *granted* a preliminary injunction, meaning that the government's appeal would necessarily implicate a wide range of issues. Here, by contrast, NewsGuard asserts that its appeal will bear on just one issue—the irreparable harm standard—which has nothing to do with the merits of its claims.

Dated:  May 29, 2026
        Washington, D.C.

OF COUNSEL:

DANIEL GUARNERA
 *Director*

KELSE MOEN
 *Deputy Director*

BUREAU OF COMPETITION

Respectfully submitted,

LUCAS CROSLOW (D.C. Bar #1048342)
 *General Counsel*

H. THOMAS BYRON III (D.C. Bar #442856)
 *Deputy General Counsel*

ALEX POTAPOV (D.C. Bar #998355)
 *Deputy General Counsel*

ALAN BAKOWSKI (D.C. Bar #990312)
ROBERT E. ZUVER, JR. (D.C. Bar #987216)
 *Attorneys*

*/s/* Ethan D. Beck
ETHAN D. BECK (D.C. Bar #90024619)
 *Counsel to the General Counsel*

FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., N.W.
Washington, D.C. 20580
(202) 326-2110
ebeck@ftc.gov

*Attorneys for the Defendants*